## John F. Devine, Administrator, Plaintiff in Error, v. Chicago City Railway Company, Defendant in Error.

## Gen. No. 16,400.

1. APPEALS AND ERRORS—*what must be looked to to determine judgment actually entered.* The record proper, rather than the bill of exceptions, should be looked to to determine what judgment was actually rendered by the court.

2. VERDICTS—*when not set aside as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

Devine v. Chicago City R'y Co., 169 Ill. App. 488.

Action in case for death caused by alleged wrongful act. Error to the Superior Court of Cook county; the Hon. Homer Abbott, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed April 11, 1912.

James C. McShane, for plaintiff in error.

Samuel S. Page and C. LeRoy Brown, for defendant in error.

Mr. Justice McSurely delivered the opinion of the court.

We are asked by the defendant in error to dismiss this writ upon the ground that the bill of exceptions does not show an appealable final judgment, but a judgment for costs only. A proper final judgment does appear in the record. It is said, however, that the judgment as it appears in the bill of exceptions must prevail, and a number of decisions are cited which support this contention. There is apparently a lack of harmony in the decisions of our courts as to the rule on this point, but we are inclined to think that the greater weight of reason and precedent favors the rule which is indicated by Justice McAllister in Van Cott v. Sprague, 5 Ill. App. 99, subsequently quoted with approval in Baldwin v. McClelland, 152 Ill. 42 (52). This rule is that the judgment has no proper place in the bill of exceptions, but only in the record.

In Cillie v. Hawkins, 48 Ill. 308 (311), the Supreme Court said: "The use of a bill of exceptions is not to embrace in it matters of record, but to make that a part of the record which otherwise would not be such. And the verdict of a jury, when entered, and the judgment rendered by the court, have always been regarded, and held to be, a part of the record in a cause, merely upon their being entered on the rolls. A bill of exceptions was, therefore, unnecessary to make them a matter of record."

In Curran v. Foley, 67 Ill. App. 543, the court said: "A bill of exceptions is not the proper place for either a verdict or judgment to be shown. The record proper, which preserves itself and needs no bill of exceptions, is the appropriate and only necessary place for a verdict and judgment to appear." To the same effect is Hawley v. Huth, 114 Ill. App. 29.

In 3 Cyc. 155, the rule is stated to be: "That which belongs to the record proper and is contained therein cannot be contradicted by anything contained in the bill of exceptions." And this is supported by a long list of citations of decisions in other states.

In our view of the rule, therefore, it is immaterial in what form the judgment appears in the bill of exceptions, and we hold that this cause is properly before this court to be disposed of on its merits.

Henry Byrne, the deceased, hereinafter called plaintiff, met his death through injuries sustained in an accident caused, it is claimed, by the negligence of the Chicago City Railway Company, hereinafter called the defendant, in operating one of its street cars. The declaration consisted of one count, wherein it is charged that the defendant "carelessly, negligently and improperly ran, managed and operated said car." The jury found the defendant not guilty and judgment was entered on the verdict, which judgment we are asked to reverse.

Briefly stated, the facts are: The plaintiff, an elderly man, on the evening of December 9, 1907, about 7:45 o'clock, was riding upon the seat of the forward one of two wagons which were fastened together and were being drawn by a single horse, which was being driven southward by another man in the west or southbound track in Wentworth avenue. When they were in the vicinity of 54th street the wheels of the rear wagon got out of the car track, and the driver in the forward wagon undertook to turn the forward wagon partially

out of the track to the east, with a view of getting the wheels of the rear wagon back in the track, but while attempting this the rear wagon in some manner bound or caught in the rails in such a way that the front wagon was pulled over and turned upon its side, and the plaintiff and the driver were both thrown out upon the ground, but neither of them was seriously injured. When the front wagon was thus turned on its side the plaintiff went forward to the horse's head, while the driver attempted to upright the wagon. A southbound car struck the rear wagon and drove it into the forward wagon, which struck plaintiff and knocked him down, while the forward wagon fell on him. From this he sustained injuries which resulted in his death two days afterwards.

It is first contended that the verdict of not guilty was contrary to the manifest weight of the evidence. Many witnesses testified touching the circumstances surrounding the accident and the conduct of the motorman. After giving consideration to the testimony of each witness, we believe the greater weight of the evidence tended to establish the facts touching the question of negligence to be as follows: At the time and place of the accident it was very dark, foggy, rainy and misty. We are inclined to give greater weight to the statements of the witnesses present at the place of the accident than to the testimony of the weather observer as to the conditions on the top of the Federal Building many miles away. The car was brightly lighted and the headlight was burning. There is little, if any, dispute as to this fact. No light or lantern was displayed at any time upon any part of the wagons or upon the horse, which was in violation of an ordinance of the city of Chicago introduced in evidence, which made it unlawful to use the streets of the city without displaying one or more lights. The street car was late because of slow running on account of the storm. Many witnesses testified concerning

the speed of the car just before the time of the accident. A larger number testified that it was going at a greatly diminished speed than testified that the car was going fast. The motorman was at his post, looking directly south all the time, and acted immediately upon discovering the danger. There is no evidence that the motorman was negligent in the matter of keeping a lookout; on the contrary, a number of witnesses who were on the front platform looking ahead testified that the motorman began to attempt to stop the car as soon as or before any of them saw the wagon. The gong on the car was being rung loudly and often; this is established by the manifest preponderance of the evidence. There is also credible evidence tending to show that the time elapsing between the upsetting of the wagon and the appearance of the car was only a couple of minutes.

From the evidence tending to establish these facts the jury would have been justified in finding that the motorman was not guilty of negligence.

Concerning the conduct of the plaintiff, we believe the greater weight of the evidence clearly establishes the facts to be as follows: Plaintiff while standing at the horse's head had nothing to do except to look out for southbound street cars. All the circumstances indicate that this was what he was expected to do while his companion was busy uprighting the wagon. We do not believe that the claim that it was necessary for plaintiff to hold the horse's head to prevent his running away is clearly supported by the evidence. Everyone else on the street at the time discovered the approach of the car. It seems to be undisputed that the driver of the wagon, three or four bystanders, a passing school teacher, all witnesses for the plaintiff, saw and heard the approaching car when it was a considerable distance away. It further seems to be clearly established by the evidence that many

of these bystanders shouted warnings to the deceased; the driver, who was fifteen or twenty feet from plaintiff, called to him; others shouted, but deceased did nothing at all towards getting out of danger.

From this evidence tending to establish these facts, the jury would have been warranted in finding the plaintiff guilty of contributory negligence.

The issues herein are practically limited to the two questions—1, was the motorman guilty of negligence, and 2, was the plaintiff guilty of contributory negligence. These questions the jury answered favorably to the defendant, and we cannot say they were wrong.

In view of our conclusion that under the evidence no other verdict could have been returned, we do not discuss the other assignments of error, except to say that such errors, if any, are not of sufficient importance to justify a disturbance of the verdict.

Therefore the judgment is affirmed.

*Affirmed.*